UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
BRUCE CHAPMAN and HANDLE WITH CARE
BEHAVIOR MANAGEMENT SYSTEM, INC.,

                                        Plaintiffs,

        -v-                                                    1:04-CV-867

NEW YORK STATE DIVISION FOR YOUTH;
NEW YORK STATE DEPARTMENT OF SOCIAL
SERVICES; NEW YORK STATE OFFICE OF
CHILDREN & FAMILY SERVICES; JOHN JOHNSON,
Commissioner of New York State Office of Children
and Family Services and former Commissioner of the
New York State Division for Youth, in his official and
individual capacity; MARGARET DAVIS, former
Director of Training for the New York State Division
for Youth and former Director of Training for New York
State Office of Children and Family Services, in her
official and individual capacity; PATSY MURRAY, former
Associate Training Technician for the New York State
Division for Youth and current Trainer for New York
State Office of Children and Family Services, in her official and
individual capacity; CORNELL UNIVERSITY; JEFFREY
LEHMAN, President of Cornell University, in his official
and individual capacity; DR. HUNTER RAWLINGS, III,
former President of Cornell University, in his official and
individual capacity; NEW YORK STATE COLLEGE OF
HUMAN ECOLOGY; FAMILY LIFE DEVELOPMENT
CENTER; RESIDENTIAL CHILD CARE PROJECT;
THERAPEUTIC CRISIS INTERVENTION; MARTHA
HOLDEN, Project Director of the Residential Child Care
Project and Therapeutic Crisis Intervention Trainer and
Coordinator, in her official and individual capacity;
MICHAEL NUNNO, Project Director of the Residential
Child Care Project and Therapeutic Crisis Intervention
Trainer and Coordinator, in his official and individual
capacity; HILLSIDE CHILDREN'S CENTER; DENNIS
RICHARDSON, President and CEO of Hillside Children's
Center, in his official and individual capacity; DOUGLAS
BIDLEMAN, Employee of Hillside Children's Center and
Therapeutic Crisis Intervention Trainer, in his official and
individual capacity; and JOHN DOE 1 through 99,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|

OFFICE OF HILARY ADLER                     HILARY ADLER, ESQ.
Attorney for Plaintiffs
184 McKinstry Road
Gardiner, NY 12525

OFFICE OF ALAN N. KACHALSKY                ALAN N. KACHALSKY, ESQ.
Attorney for Plaintiffs
800 Westchester Avenue
Suite S-608
Rye Brook, NY 10573

HON. ERIC T. SCHNEIDERMAN                  DOUGLAS J. GOGLIA, ESQ.
Attorney General of the                    Asst. Attorney General
  State of New York
Attorney for Defendants NYS Division for Youth;
    NYS Department of Social Services; NYS
    Office of Children & Family Services; John
    Johnson; Margaret Davis; and Patsy Murray
Department of Law
The Capitol
Albany, NY 12224

OFFICE OF UNIVERSITY COUNSEL               NELSON E. ROTH, ESQ.
Attorneys for Cornell University; Jeffrey Lehman;
    Dr. Hunter Rawlings, III; NYS College of
    Human Ecology; Family Life Development
    Center; Residential Child Care Project;
    Therapeutic Crisis Intervention; Martha Holden;
    and Michael Nunno
300 CCC Building
Garden Avenue
Ithaca, NY 14853

PETRONE, PETRONE LAW FIRM                  JOHN R. PETRONE, ESQ.
Attorneys for Hillside Children's Center; Dennis
    Richardson; and Douglas Bidleman
1624 Genesee Street
Utica, NY 13502

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs, Handle With Care Behavior Management System, Inc. ("HWC") and its president, Bruce Chapman ("Chapman," collectively "plaintiffs"), market a behavior management program that is used by professionals who must physically restrain others. Plaintiffs have brought this action against three sets of defendants—the "state defendants," the "Cornell defendants," and the "Hillside defendants"—regarding the alleged misuse of their copyrighted program materials and manipulation of the market for their products. Plaintiffs seek monetary damages and injunctive relief.

The state defendants include:  New York State Office of Children and Family Services ("OCFS"), which, in 1998, assumed the functions of defendants New York State Division for Youth ("DFY") and New York State Department of Social Services ("DSS"); John Johnson ("Johnson"), Commissioner of OCFS; and Margaret Davis ("Davis") and Patsy Murray ("Murray"), former OCFS employees.  The Cornell defendants include:  Cornell University itself; Jeffrey Lehman, the University's former president; Dr. Hunter Rawlings, III, the University's current president; New York State College of Human Ecology ("the College"), a statutory college of the State University of New York; the Family Life Development Center, the Residential Child Care Project ("RCCP"), and Therapeutic Crisis Intervention ("TCI")— alleged subsidiaries of the College; and Martha Holden and Michael Nunno, employees of RCCP and TCI.  The Hillside defendants include:  the Hillside Children's Center ("HCC"), a private childcare provider and residential treatment center; Dennis Richardson, HCC's president; and Douglas Bidleman, an HCC employee.

On September 29, 2005, defendants' motion to dismiss was granted and the complaint, which contained three federal causes of action and seven state causes of action, was dismissed in its entirety.  Chapman v. N.Y. Div. for Youth, 2005 WL 2407548 (N.D.N.Y. 2005).[1]  Plaintiffs appealed, and, on October 14, 2008, the Second Circuit reinstated only the federal copyright infringement cause of action against the state defendants, noting:

> The district court dismissed plaintiffs' copyright claim on the basis that the contract at issue unambiguously granted the state defendants the right to copy plaintiffs' materials indefinitely.  We disagree with that conclusion, find the contract ambiguous, and remand the case to the district court to determine the duration of the license to copy plaintiffs' materials granted under the contract.

Chapman v. N.Y. Div. for Youth, 546 F.3d 230, 234 (2d Cir. 2008), cert. denied, 130 S. Ct. 552 (2009).

Therefore, the only cause of action at issue is the federal claim for copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101–1332 (2006), against the state defendants.[2]  Further, the only issue to be determined is the duration of the license to copy plaintiffs' training materials.

---

[1]  It is noted that Chapman also filed a qui tam action on December 30, 2004, asserting eighteen causes of action under the False Claims Act against a different group of state and Cornell defendants. The United States of America declined to intervene in that action, which was based on the same business relationship and facts at issue here.  That complaint was dismissed in its entirety on February 16, 2010. United States ex rel. Chapman v. Office of Children & Family Servs. of N.Y., No. 1:04-CV-1505, 2010 WL 610730 (N.D.N.Y. 2010), aff'd, Chapman v. Office of Children & Family Servs. of N.Y., No. 10-967-CV, 2011 WL 2163997 (2d Cir. 2011) (summary order).

[2]  Subsequent orders, dated May 1 and May 12, 2009, reinstated the previously dismissed pendent state claims but stayed further action and discovery on these claims.  See Dkt. Nos. 143, 148. These orders also made clear that if the state defendants' expected motion for summary judgment on the one remaining federal claim is granted, supplemental jurisdiction over the state claims would not be exercised.  If, however, the state defendants' motion for summary judgment is denied, supplemental jurisdiction would be exercised and discovery would be reopened on the state claims at that time.

The state defendants[3] have moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, regarding the federal copyright infringement claim.  Dkt. No. 217. Plaintiffs oppose the motion and have cross-moved for summary judgment.  Dkt. No. 227. The motions were considered on submit.

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  HWC is a New York corporation that provides crisis intervention services and trains childcare workers in physical restraint techniques.  On June 7, 1984, Chapman—founder and president of HWC—filed with the United States Copyright Office a manual entitled "Handle With Care - A Revolutionary Approach to Behavior Management" ("the 1984 Manual").

DFY was a New York state agency that, until 1998, was responsible for the care and welfare of juveniles in the state's custody.  DFY was obligated by law to train staff to use proper techniques to restrain juveniles in certain circumstances.  DSS was a New York state agency that, until 1998, licensed, regulated, and supervised childcare agencies within the state.  In 1998, DFY and DSS merged into OCFS, which assumed the functions of the two agencies.  At that time, Johnson, who was the Director of DFY, became Commissioner of OCFS.  Davis, who was the Director of Training at DFY, became Assistant Director of Training at OCFS but has since retired.  Murray, who was Associate Training Technician for DFY, served as a trainer at OCFS from 1998 until 2003.

The interaction between the parties began in late 1987 when DFY and Chapman entered into a contract under which Chapman trained DFY staff in physical restraint

---

[3]  As the sole federal claim at issue is asserted against the state defendants only, all references to "defendants" hereinafter is to be understood as a reference to the state defendants.

techniques between January 1 and March 31, 1988 ("the 1987 Contract").  This contract required Chapman to furnish DFY with a copy of the 1984 Manual, which DFY was permitted to reproduce "in whole or in part as required."  The contract also required Chapman to provide a training video "to be used by [DFY]'s master trainers in conducting training programs for facility staff."  Thereafter, Davis incorporated descriptions and illustrations of several techniques from the 1984 Manual into an updated DFY trainers' manual.[4]  To accurately incorporate these techniques into the DFY manual, Davis attended and took notes at Chapman's training sessions.  Moreover, a DFY employee created a video of Chapman training DFY staff.  Davis provided Chapman with a copy of the updated DFY manual in March 1988 ("the 1988 Manual").[5]  Thereafter, Chapman used the 1988 Manual to train other clients.

In April 1996 Chapman sent a letter to Davis in which he advised, inter alia, that he had modified and improved his physical restraint techniques.  In November 1996 DFY posted a Request For Bid ("RFB") seeking a vendor to recertify DFY trainers in restraint techniques. DFY specifically sought an instructor to update staff on techniques used in the HWC program.  The RFB also indicated that the winning bidder must provide DFY with the rights to reproduce any and all training materials.  HWC submitted the only bid, which was signed by Chapman.  In a letter accompanying this bid, Chapman recommended annual recertification

---

[4]  Defendants specifically acknowledge incorporating the following techniques into the DFY trainers' manual:  the "Personal Defense System," the "Primary Restraint Technique," the "Two Person Escort," and the "Team Restraint System."  Plaintiffs argue that the illustrations and accompanying text of additional techniques from the 1984 Manual were also incorporated into the updated DFY manual.

[5]  Plaintiffs maintain that this revised manual was merely the 1984 Manual that Davis had "retypeset" and was therefore a "derivative" of the 1984 Manual.

of trainers but noted that he was not seeking a contract obligating DFY to recertify its trainers on an annual basis.

HWC's bid was accepted, and a contract was executed between Chapman and DFY in April 1997 ("the 1997 Contract").  Under the 1997 Contract, Chapman was to update and recertify DFY staff in HWC's restraint techniques between May 1 and August 31, 1997.  The contract contained a provision allowing for the extension of the contract for two additional four-month terms upon written consent of the parties.  Pursuant to the agreement, Chapman provided DFY with updated HWC instructor and participant manuals as well as an instructional video ("the 1995 Video").  Labels on these materials indicated that they were copyrighted by HWC and could not be reproduced or transmitted without written permission of HWC.  The 1997 Contract, drafted by DFY, indicated that DFY had "the right to reproduce all training materials."

Chapman then drafted a separate agreement between HWC and each participant in the training program.[6]  This agreement specified that the participant's certification to train other DFY staff in HWC's techniques expired after one year.  The certificates Chapman provided to each participant upon completion of the program also indicated that they were certified to teach the HWC program for one year only.  DFY continued to reproduce and use HWC's training materials after the one-year certification period expired in July 1998.[7]

In October 1998 Chapman filed a revised version of the 1984 Manual with the United States Copyright Office ("the 1998 Manual").  Chapman acknowledges that approximately

---

[6]  Defendants Davis and Murray each signed one of these separate participant agreements.

[7]  The last training session conducted pursuant to the 1997 Contract took place on July 23, 1997. Therefore, all DFY trainers' certifications expired, according to Chapman's imposed one-year limitation, on July 23, 1998.

four pages of the 1998 Manual were not written by him.  These pages include material

provided to Chapman by DFY.

## III.  DISCUSSION

Plaintiffs' copyright infringement claim concerns defendants' use of the 1984 Manual,

the 1995 Video, the 1998 Manual, and derivative works thereof.  In their motion for summary

judgment, defendants argue that:  (1) they are entitled to Eleventh Amendment immunity; (2)

the HWC manuals at issue were coauthored by DFY and Davis; (3) plaintiffs authorized DFY

to reproduce and use the materials at issue; and (4) the doctrines of laches and equitable

estoppel preclude plaintiffs' copyright claim.  Plaintiffs assert that they are entitled to

summary judgment because:  (1) defendants waived Eleventh Amendment immunity; (2)

defendants were only authorized to copy and use the materials at issue for one year after the

training sessions[8]; and (3) DFY employees, including Davis, did not coauthor the materials at

issue.

### A.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits . . . show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S.

317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247,

106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry if it "might

---

[8]  In their appeal of the motion to dismiss, plaintiffs argued that the license to copy the materials, granted in the 1997 Contract, ended 120 days after the agreement commenced.  Chapman, 546 F.3d at 236.  In the current motion for summary judgment, plaintiffs maintain that the license ended one year after the training sessions were held.

affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510; <u>see also</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. <u>Id</u>. at 250 n.4, 106 S. Ct. at 2511 n.4.  The failure to meet this burden warrants denial of the motion. <u>Id</u>.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. <u>Id</u>. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. <u>Jeffreys</u>, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); <u>see also</u> <u>Anderson</u>, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## B. <u>Copyright Infringement Claim</u>

Defendants do not dispute that they reproduced and used HWC's copyrighted training materials. <u>Chapman</u>, 546 F.3d at 235.  The only issue is whether they had plaintiffs'

permission to do so.  Defendants maintain that the 1987 Contract[9] provided them with an unrestricted license to reproduce HWC's training materials as needed.  Plaintiffs acknowledge that the 1987 and 1997 Contracts provided defendants with a license to copy the materials but now argue that the licenses were intended to run concurrent with the DFY trainers' certification and expire one year after the 1988 and 1997 training sessions were completed.

### 1. Applicable Law

It is well-settled that "[a] copyright owner who grants a nonexclusive license to use his copyrighted materials waives his right to sue the licensee for copyright infringement." Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998).  Where the scope of a copyright license is in question, "the copyright owner bears the burden of proving that the defendant's copying was unauthorized."  Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995).  "Copyright disputes involving only the scope of the alleged infringer's license present the court with a question that essentially is one of contract: whether the parties' license agreement encompasses the defendant's activities."  Id.

When interpreting a contract, the "key inquiry . . . is whether it is ambiguous with respect to the issue disputed by the parties."  Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 914 (2d Cir. 2010).  A contract is ambiguous if its terms "could suggest more than one

---

[9]  While the two previous orders in this case analyzed the 1997 Contract, defendants now assert that the 1987 Contract provided them with an unrestricted license to reproduce HWC's training materials. Defs.' Mem. of Law, Dkt. No. 219, at 27.  This does not alter the current analysis as the 1987 and 1997 Contracts are substantially similar.  See generally Davis Decl., Exs. F & N, Dkt. Nos. 217-17, 217-25 ("1987 Contract" and "1997 Contract" respectively).  Neither contract contains an explicit provision regarding the duration of the license conferred to defendants.  As the Second Circuit deemed the 1997 Contract ambiguous as to the length of the license, so too is the 1987 Contract.  Therefore, the following analysis will consider extrinsic evidence related to both contracts.

meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (internal quotation marks omitted).  "Although a determination that a contract is ambiguous ordinarily requires denial of summary judgment, the court may nonetheless grant summary judgment where the extrinsic evidence illuminating the parties' intended meaning of the contract is so one-sided that no reasonable person could decide to the contrary." N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 115 (2d Cir. 2010) (internal quotation marks omitted).

The Second Circuit concluded that the 1997 Contract was ambiguous as to the duration of the license and remanded the matter for consideration of extrinsic evidence related to the parties' intent. Chapman, 546 F.3d at 237.  Defendants argue that by reinstating the copyright claim and ordering consideration of extrinsic evidence, the Second Circuit has "inexplicably overlooked" a "fundamental tenet of copyright jurisprudence."  Defs.' Mem. of Law at 29.  Specifically, defendants point out that where, as here, "a contract is silent as to the duration of the grant of copyright rights, the contract is read to convey rights for the initial copyright period." P.C. Films Corp. v. MGM/UA Home Video Inc., 138 F.3d 453, 458 (2d Cir. 1998).

Applying such case law would fill the missing duration term in the 1987 and 1997 Contracts and compel a finding that defendants' license lasted well after the one-year

limitation suggested by plaintiffs.[10]  While this would end the inquiry and result in the grant of summary judgment in defendants' favor, an in-depth discussion of P.C. Films and its applicability is unnecessary because, as discussed below, the pertinent extrinsic evidence shows that no reasonable person could conclude the licenses were limited to one year as plaintiffs allege.

### 2. Extrinsic Evidence

Both the 1987 and 1997 Contracts are ambiguous as to how long the licenses conferred in each were intended to last.  There is no provision specifically limiting the duration of the licenses.  Instead, the language of the contracts, coupled with the behavior of and interaction between the parties, evidences an understanding that the licenses were intended to be open-ended.[11]

The 1987 Contract required Chapman to provide a training video "to be used by [DFY]'s master trainers in conducting training programs for facility staff."  1987 Contract, § II. Considering Chapman was to train certain DFY employees as "master trainers" who would, in turn, train other DFY employees in proper restraint techniques, the only reasonable interpretation of this provision is that defendants were permitted to use the training video well after Chapman completed his training sessions in 1988.  Indeed, it defies logic to certify master trainers—who would be charged with training other DFY staff—but not provide them

---

[10]  However, defendants' assertion that the 1987 Contract provided a "perpetual" license is rejected because Chapman did not possess perpetual copyright rights over the training materials.  The Copyright Act dictates that "[c]opyright in a work created on or after January 1, 1978, subsists from its creation and . . . endures for a term consisting of the life of the author and 70 years after the author's death."  17 U.S.C. § 302(a) (2006).  At most, therefore, the 1987 Contract could have conveyed a license lasting up to seventy years after Chapman's death.

[11]  As explained above, however, the duration of the licenses were legally limited to the length of time Chapman held the copyright rights to the materials.  Supra note 10.

access to the materials they need to perform such training.  Noticeably absent from the 1987

Contract is any provision obligating defendants to retain plaintiffs' services on an annual

basis to recertify the master trainers.  Plaintiffs do not put forth anything to suggest that

defendants were prohibited from reproducing and using the materials to train new DFY

employees on an ongoing basis.

In fact, Chapman himself admitted as much during a sworn deposition relating to a

separate litigation in 1999.[12]  Chapman acknowledged that the updated 1988 Manual was

rewritten with DFY's "help."  Goglia Decl., Ex. F, Dkt. No. 217-7, at 22: 16–17.  When asked

what DFY received in return for such assistance, Chapman replied:  "They got a manual that

they could have as part of their curriculum."  Id. at 25: 12–14.  Chapman further claimed that

the 1987 Contract placed no written or verbal restrictions on DFY's use of the HWC manual,

"[o]ther than my copyright."  Id. at 26: 15–21.  This testimony reflects an understanding that

DFY could reproduce and use the training materials as needed, subject only to the existence

of Chapman's copyright.  Therefore, as long as Chapman held the copyright rights to this

material, defendants could only use it for their own training purposes—which is exactly what

they are alleged to have done.

Moreover, there is nothing in the record indicating that plaintiffs complained of

defendants' continued use of the materials or sought to prevent such use after the purported

one-year limitation period ended in 1989.  After Chapman completed the 1988 training

sessions, the next contact between the parties was when he sent a letter to Davis in April

1996 advising that he had revised and improved the training program.  See Davis Decl., Ex.

---

[12]  Plaintiffs filed a similar copyright infringement action against different defendants in the district court of Nebraska in October 1998.  See Goglia Decl., Exs. D & E, Dkt. Nos. 217-5, 217-6.

J, Dkt. No. 217-21.  During the intervening eight years, plaintiffs never insisted that

defendants stop using the training materials, nor did they advise that defendants were out of

compliance with the program because they failed to recertify their staff on an annual basis.

Instead, in his April 1996 letter, Chapman noted that annual recertification was merely a

"recommendation" and sought a new contract to update the existing trainers on the improved

HWC program.  Id.  Defendants' continued reproduction and use of HWC's training materials

is not mentioned anywhere in this letter.  See id.

Given this historic interaction between the parties, plaintiffs were aware that

defendants would continue to reproduce and utilize the training materials well after any

purported one-year, or 120-day, limitation ended.  However, while negotiating the 1997

Contract, plaintiffs did not insist on the inclusion of a provision requiring annual recertification

or an express limit on how long defendants would be permitted to reproduce and use the

materials.[13]  Instead, Chapman specifically advised defendants, in a letter accompanying his

bid for the 1997 Contract, that he was not seeking a contract obligating DFY to recertify its

trainers on an annual basis.  See Davis Decl., Ex. M, Dkt. No. 217-24.  The only documented

consequence of defendants' failure to keep their trainers' certifications current was the loss of

Chapman's "free expert testimony."  Id.  Moreover, the 1997 Contract did not require

defendants to pay a monthly or annual fee for continued access to the training materials.

---

[13]  Any suggestion that Chapman was unable to negotiate with DFY at arm's-length or that DFY
dictated the terms of the 1997 Contract is unpersuasive.  Chapman was the founder and president of
HWC, had apparently entered into service contracts nationwide, and HWC's was the only bid submitted in
response to defendants' RFB.  Further, Chapman negotiated other specific details of the 1997 Contract,
such as the number of participants to be permitted in each class.  See Davis Decl., Ex. M, Dkt. No. 217-
24.

Nor did the provision allowing for an extension of the contract for two additional four-month terms reference the training materials.

Plaintiffs claim that the participant agreements, which Chapman drafted and required each participant to sign, evidence an intent to limit the license granted in the 1997 Contract to one year after the completion of the training sessions.  However, these agreements were made between Chapman and individual DFY employees <u>after</u> the 1997 Contract had been entered into.  They therefore shed no light on the intent of the parties as the 1987 or 1997 Contracts were being negotiated.  Moreover, there is nothing in the participant agreements that requires defendants to bring Chapman back for annual recertifications, prohibits the use of the training materials by non-certified DFY staff (or staff whose certification had lapsed according to plaintiffs' imposed one-year limitation), or otherwise modifies the 1997 Contract in any way.  While these agreements evidence an understanding that the participants would be certified to teach the "Basic Training Program" for only one year, there is no indication that the parties intended the use of HWC's training materials to run concurrently with the certification of the participants.  Instead, these agreements were intended to guard plaintiffs from liability for any subsequent litigation stemming from the conduct of DFY employees' whose certification had lapsed.  In their answers to defendants' interrogatories, plaintiffs characterize the participant agreements as "release of liability waiver[s]."  <u>See</u> Goglia Decl., Ex. A, Dkt. No. 217-2, 9.

Finally, after he completed the training sessions in July 1997, Chapman did not contact defendants again until November 2002, when he informed Davis that OCFS's license and certifications had "lapsed."  Chapman Decl., Dkt. No. 228, ¶ 109.  Chapman then sent a "Cease and Desist Notice" to OCFS in December 2002.  <u>Id</u>. ¶ 110.  This belies plaintiffs'

claim that the copyright license, admittedly granted by the 1997 Contract, ended in 1998. Plaintiffs offer no explanation as to why they did not take any action for over four years, during which defendants continued to use the HWC training materials, and derivatives thereof, to train their staff.

The only reasonable conclusion is that the 1997 license, like the one conveyed in the 1987 Contract, permitted defendants to use the training materials as needed, subject only to the existence of Chapman's copyright. Accordingly, defendants' motion for summary judgment will be granted as to the federal copyright claim.[14]

## IV. CONCLUSION

In both the 1987 and 1997 Contracts, plaintiffs granted defendants a license to copy and use HWC's training materials. Both contracts are ambiguous with respect to the duration and limits of these licenses. However, the extrinsic evidence clearly demonstrates that the parties intended to allow the defendants to reproduce and use the training materials as long as Chapman held the copyright rights to such materials, and no reasonable factfinder could decide to the contrary. Defendants copied these materials and continued to utilize them to train their staff, as contemplated by the licenses. Plaintiffs therefore fail to meet their burden of proving that the defendants' use of the copyrighted materials exceeded the licenses conferred or was otherwise unauthorized.

---

[14] The state defendants also argue that they are entitled to immunity under the Eleventh Amendment. Plaintiffs maintain that the defendants waived this immunity by enacting Section 8 of the New York State Court of Claims Act, including choice-of-law and non-arbitration clauses in the 1997 Contract, and attempting to bring a counterclaim based on OCFS's alleged co-authorship of the training manual. Because the copyright claim will be dismissed on the merits, it need not be determined whether the state defendants effectively waived their immunity. For the same reason, it is unnecessary to reach defendants' assertion that they coauthored the training material or that the doctrines of laches and equitable estoppel preclude plaintiffs' copyright claim.

As a result of the above, it is

ORDERED, that

1.  The state defendants' motion for summary judgment (Dkt. No. 217) is GRANTED;

2.  Plaintiffs' cross-motion for summary judgment (Dkt. No. 227) is DENIED;

3.  The federal copyright claim is DISMISSED with prejudice; and

4.  Supplemental jurisdiction over the remaining state law claims is declined, and

those claims are DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   July 18, 2011
         Utica, New York.